# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT,<br><br>*Plaintiff*,<br><br>v.<br><br>OFFICE OF MANAGEMENT AND BUDGET,<br><br>*Defendant*. | No. 18-cv-2424 (DLF) |

## MEMORANDUM OPINION AND ORDER

American Oversight brings this lawsuit against the Office of Management and Budget ("OMB") under the Freedom of Information Act, 5 U.S.C. § 552 (the "FOIA"), challenging OMB's response to two FOIA requests made by American Oversight on August 30, 2018. Before the Court are OMB's Motion for Summary Judgment, Dkt. 18, and American Oversight's Cross-Motion for Summary Judgment, Dkt. 19. For the reasons that follow, the Court will grant in part and deny in part OMB's Motion for Summary Judgment and deny without prejudice American Oversight's Cross-Motion for Summary Judgment.

## I. BACKGROUND

On August 27, 2018, the Office of the Inspector General of the U.S. General Services Administration ("GSA") published a report entitled, "Review of GSA's Revised Plan for the Federal Bureau of Investigation Headquarters Consolidation Project." Dkt. 1 (Compl.) ¶ 7. The report alleged, among other things, that a GSA official had misled Congress about the White House's involvement in an ongoing project to rebuild the existing headquarters of the Federal Bureau of Investigation ("FBI"). *Id.*

On August 30, 2018, American Oversight submitted two FOIA requests to OMB. The first request sought "[a]ll records reflecting communications . . . between or among . . . the following [OMB officials] and any person at the White House Office (including anyone with an email address ending in @who.eop.gov) regarding the FBI headquarters consolidation project." Dkt. 18-1 (First Walsh Decl.) Ex. 1 at 2. The request then named the following OMB officials: Director Mick Mulvaney, Deputy Director Russ Vought, and "[a]nyone communicating on behalf of the Director or Deputy Director (including those performing duties in an acting capacity), such as a Chief of Staff, Executive Assistant, or Secretary." *Id.* The request sought "all responsive records from January 20, 2017, through the date of the search." *Id.* Finally, the request provided a list of 16 search terms that American Oversight "request[ed]" OMB use in order to "help identify responsive records." *Id.*[1]

American Oversight's second request was divided into two parts. The first part of the second request sought "[a]ll records reflecting communications . . . between or among" the same OMB officials identified in the first request and "any individuals associated with the Trump Organization LLC or Trump Hotels," including any of fifteen individuals identified by name in the request or "[a]nyone communicating from an email address ending with @trumporg.com, @trump.com, @trumphotels.com, @ijkfamily.com." First Walsh Decl. Ex. 2 at 2.[2] The second

---

[1] Specifically, American Oversight requested that OMB use the following search terms: (i) "consolidat*"; (ii) "renovat*"; (iii) "demoli*"; (iv) "rebuild*"; (v) "relocat*"; (vi) "Trump Hotels", (vii) "Trump International Hotel"; (viii) TIH; (ix) "Trump Org*"; (x) "Post Office"; (xi) OPO; (xii) Headquarters; (xiii) HQ; (xiv) HQS; (xv) HQs; (xvi) JEH. Walsh Decl. Ex. 1. An asterisk indicates a "wildcard" search that would return any results containing the precise combination of letters before the asterisk. *Id.*

[2] The request specifically sought communications with any of the following individuals: (a) Donald "Don" Trump Jr.; (b) Eric Trump; (c) Ivanka Trump; (d) Jared Kushner; (e) George Sorial; (f) Amanda Miller; (g) Alan Garten; (h) Matthew Calamari; (i) Lawrence Glick; (j) Ron Lieberman; (k) Allen Weisselberg; (l) Andrew Weiss; (m) Jill Martin; (n) Deirdre Rosen; (o) Eric "Ed" Danziger. *Id.*

part of the second request sought "[a]ll records reflecting communications" with the same OMB officials identified in the first request "containing the search terms listed below." *Id.* at 3. The request then listed the following six terms: (i) "Trump Hotel*"; (ii) "Trump International Hotel"; (iii) TIH; (iv) "Trump Org*"; (v) "Post Office"; (vi) OPO. *Id.*[3] Both parts of the second request sought "all responsive records from January 20, 2017, through the date of search." *Id.* at 2, 3.

OMB acknowledged receipt of American Oversight's requests on September 7, 2018. First Walsh Decl. Exs. 3, 4. On October 23, 2018, after the statutory deadline for OMB to respond to American Oversight's requests had expired, *see* 5 U.S.C. § 552(a)(6)(C)(i), American Oversight filed its complaint. The complaint alleged two violations of FOIA, one for OMB's alleged failure to conduct adequate searches for records responsive to the two requests, Compl. ¶¶ 21–26, and one for OMB's alleged wrongful withholding of non-exempt responsive records, Compl. ¶¶ 27–33. American Oversight seeks an order requiring OMB to "conduct a search . . . reasonably calculated to uncover all records responsive to" the requests; an order requiring OMB to "produce . . . any and all non-exempt records responsive to" the requests; and an order enjoining OMB "from continuing to withhold any and all non-exempt records responsive to" the requests. Compl. at 9.

On December 21, 2018, OMB informed American Oversight of its initial search plan. First Walsh Decl. Ex. 5 at 1. On January 29, 2019, American Oversight informed OMB of its objections to that plan. Dkt. 19-3 (Wood Decl.) Ex. A. On February 21, OMB provided American Oversight with an update on its searches. In response to the first request, OMB noted that many of American Oversight's 16 proposed search terms "would be overly broad and would

---

[3] American Oversight's second request also used asterisks to indicate "wildcard" searches that would return any results containing the precise combination of letters appearing before the asterisk. *Id.*

3

unnecessarily capture many records that are unrelated to the FBI headquarters consolidation project," potentially causing "significant delays in locating and processing records." First Walsh Decl. Ex. 6 at 1. Accordingly, OMB searched its records for emails with any participant with an email address ending in "who.eop.gov" that contained the following terms: "FBI headquarters consolidation project," OR "FBI" (w/25) "Headquarters," OR "FBI HQ."[4] *Id.* In response to the second request, OMB noted that both parts of the request failed to "state a subject matter" and were thus "overly broad," and accordingly that it would interpret both parts of the request "as seeking records pertaining to the FBI headquarters consolidation project and the Trump Hotel or the Trump Organization." *Id.* at 1, 2. For each part of the second request, therefore, OMB used the same search terms that it used in searching for records responsive to the first request. *Id.*

OMB subsequently conducted a supplemental search for records responsive to the requests. *Id.* Ex. 8. In response to the first request, using the same custodians and dates used in the initial search, OMB searched for emails with any participant ending in "who.eop.gov" that contained the following search terms: "((HQ (w/25) project) OR (HQ (w/25) renovation) OR (HQ (w/25) relocation) OR (HQ (w/25) Trump))." *Id.* In response to the second request, OMB performed two supplemental searches. First, OMB used the same search terms listed above but "replaced the 'who.eop.gov' limitation with the names of each individual and email domain" listed in the initial version of the second request. *Id.* Second, using the same custodians and dates used in the initial search, OMB searched for emails containing the following search terms: "FBI (w/25) (HQ OR Headquarters) (w/25) Trump." *Id.*

---

[4] The search term "(w/25)" indicates a search for any record in which the preceding search term appears within 25 words of the following one.

The results of OMB's searches were as follows. In response to the first request, OMB's initial search returned 177 potentially responsive documents, fifteen of which were actually responsive, and its supplemental search returned 79 potentially responsive documents, none of which were actually responsive. *Id.* ¶ 16. In response to the second request, OMB's initial search returned 77 potentially responsive documents, three of which were actually responsive. *Id.* ¶ 17. Its supplemental search for the first part of the request returned sixteen potentially responsive documents, none of which were actually responsive, and its supplemental search for the second part of the request returned 125 additional documents, four of which were actually responsive. *Id.* ¶ 17.

Of the fifteen documents responsive to the first request, OMB released six documents either in full or with redactions made pursuant to FOIA Exemption 5, 5 U.S.C. § 552(b)(5), under the deliberative process privilege, or pursuant to FOIA Exemption 6, 5 U.S.C. § 552(b)(6), to protect personal information. *Id.* ¶ 19. OMB produced these documents to American Oversight on April 3, 2019. *Id.* Ex. 7. OMB withheld the other nine documents in full under FOIA Exemption 5, six of them pursuant to the presidential communications privilege and three of them pursuant to the deliberative process privilege. *Id.* App. A. Of the seven documents responsive to the second request, OMB released one document with redactions made pursuant to FOIA Exemption 5, under the deliberative process privilege, and pursuant to FOIA Exemption 6, to protect personal information. *Id.* ¶ 20. OMB produced this document to American Oversight on May 17, 2019. *Id.* OMB withheld the other six documents in full under FOIA Exemption 5 pursuant to the presidential communications privilege. *Id.* App. A.

On May 28, 2019, OMB filed its Motion for Summary Judgment. Dkt. 18 (Mot. for S.J.). OMB argued that it had complied with FOIA by conducting a reasonable and adequate search for

records responsive to American Oversight's requests. *Id.* at 4. OMB also argued that it had properly invoked the deliberative process and presidential communications privileges under FOIA Exemption 5, *id.* at 14, 19, and that it had properly redacted personal information under FOIA Exemption 6, *id.* at 21. On June 28, 2019, American Oversight filed its opposition to OMB's motion, along with its own Cross-Motion for Summary Judgment. Dkt. 19 (Cross-Mot. for S.J.). American Oversight argued that OMB had failed to conduct an adequate search for records responsive to the second request, *id.* at 8, and that it had failed to conduct a search reasonably calculated to locate all records responsive to the first request, *id.* at 24. American Oversight also argued that OMB had improperly limited its searches to email communications, *id.* at 30, and that it had improperly withheld non-exempt information under the presidential communications privilege, *id.* at 31.[5]

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Materiality is, of course, a function of the applicable legal standard, which in this case is that an agency responding to a FOIA request must conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable." *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996) (internal quotation marks omitted). All facts and inferences must be viewed in the light most favorable to

---

[5] American Oversight did not challenge OMB's invocation of the deliberative process privilege pursuant to FOIA Exemption 5 or its redaction of personal information pursuant to FOIA Exemption 6.

the requester and the agency bears the burden of showing that it complied with FOIA. *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

To meet this standard, a federal agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements." *Nat'l Cable Television Ass'n, Inc. v. Fed. Commc'ns Comm'n*, 479 F.2d 183, 186 (D.C. Cir. 1973). "The system of disclosure established by the FOIA is simple in theory. A federal agency must disclose agency records unless they may be withheld pursuant to one of the nine enumerated exemptions listed in [5 U.S.C.] § 552(b)." *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988).

"[F]ederal courts . . . rely on government affidavits to determine whether the statutory obligations of the FOIA have been met." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam). The agency's affidavit is accorded a presumption of good faith, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted), and "[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith," *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (internal quotation marks omitted).

If, on the other hand, "material facts are genuinely in issue or, though undisputed, are susceptible to divergent inferences bearing upon an issue critical to disposition of the case, summary judgment is not available" to the agency. *Alyeska Pipeline Serv. Co. v. Envtl. Prot. Agency*, 856 F.2d 309, 314 (D.C. Cir. 1988). That said, courts in this jurisdiction recognize that

"the vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

## III. ANALYSIS

### A. Adequacy of the Searches

To secure summary judgment under FOIA, an agency "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original). "The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Id.* The question is whether the CIA's search was "reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard*, 926 F.2d at 1201.

#### 1. First Request

American Oversight's first request sought "[a]ll records reflecting communications . . . regarding the FBI headquarters consolidation project" between or among "any person at the White House Office (including anyone with an email address ending in @who.eop.gov)" and OMB officials Mulvaney, Vought, or anyone communicating on either of their behalf. First Walsh Decl. Ex. 1 at 2. That request also included a list of sixteen search terms that American Oversight requested OMB use. *Id.* In responding to that request, OMB searched its records for emails with any participant ending in "who.eop.gov" that included the terms "FBI headquarters consolidation project" or "FBI HQ," as well as emails containing "FBI" within 25 words of

8

"headquarters," and emails containing "HQ" within 25 words of "project," "renovation," "relocation," or "Trump." *Id.* Ex. 6 at 1, Ex. 8 at 1.

This search was not adequate. To begin with, while the request sought "*[a]ll . . . communications . . . regarding the FBI headquarters consolidation project*," *id.* Ex. 1 at 2 (emphasis added), OMB's search would not have captured documents referring to the FBI headquarters by any name other than "FBI headquarters" or "FBI HQ." Such a search could not be "reasonably expected to produce" *all* communications regarding the FBI headquarters consolidation project. *Reporters Comm.*, 877 F.3d at 402. Indeed, this Court has previously reached that precise conclusion under nearly identical circumstances. In *Citizens for Responsibility & Ethics in Washington v. United States General Services Administration*, No. 18-CV-377, 2018 WL 6605862 (D.D.C. Dec. 17, 2018), the plaintiff requested various records regarding GSA's decision to cancel the procurement for the FBI headquarters consolidation project, *id.* at *1, and criticized the agency's search when it failed to include the search terms "JEH" and "the Hoover Building," *id.* at *5. The Court deemed it "rather likely that 'JEH' and 'the Hoover Building'—referring to the current headquarters—would be used in communications and records regarding the headquarters consolidation project; a search reasonably calculated to uncover all documents responsive to [the plaintiff's] request therefore ought to include these rather obvious synonyms." *Id.* As a general matter, "omitting from the search an alternative name by which the subject of the search is known renders the search inadequate." *Utahamerican Energy, Inc. v. Mine Safety & Health Admin.*, 725 F. Supp. 2d 78, 84 (D.D.C. 2010). At a

minimum, OMB has failed to justify its refusal to use the search term "JEH," one of the sixteen terms specifically requested by American Oversight.[6]

More generally, the Court finds OMB's justification of its search terms—and, in particular, its justifications for refusing to use the terms suggested by American Oversight—insufficient. It is true that "a FOIA petitioner cannot dictate the search terms for his or her FOIA request." *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015). But the agency must still "provide[] an explanation as to why the search term was not used." *Am. Ctr. for Equitable Treatment, Inc. v. Office of Mgmt. and Budget*, 281 F. Supp. 3d 144, 152 (D.D.C. 2017) (quotation omitted). Here, OMB has objected to several of American Oversight's proposed search terms on the ground that the search term would return too many impertinent results. *See, e.g.*, First Walsh Decl. ¶ 10 ("[T]he suggested term 'Post Office' could relate to a variety of activities regularly encountered by the designated custodians that have no connection to the subject of this Request, such as the Administration's task force for the reform of the U.S. Postal Service (USPS) on which the Director of OMB sits, and finance and appropriations matters concerning the USPS."). Even so, OMB could have used other search terms such as "Trump Org" or "Trump Hotels" to limit the results of the search to those relevant to American Oversight's request. Accordingly, the Court concludes that OMB has not established that it has conducted a search "reasonably calculated to uncover all relevant documents" responsive to American Oversight's first request. *Kowalczyk*, 73 F.3d at 388.

---

[6] In a supplemental declaration, OMB attempts to justify its refusal to search for "JEH" on the ground that "[t]he signature line of many FBI employees includes [the term 'JEH'], and OMB custodians are likely to interact with FBI personnel or even possibly visit the J. Edgar Hoover building." Dkt. 21-1 (Second Walsh Decl.) ¶ 4. But at a minimum, as described below, OMB could have combined the term "JEH" with other search terms in order to minimize impertinent returns.

10

### 2. Second Request

American Oversight's second request contained two parts. The first part of the request sought "[a]ll records reflecting communications" between Mulvaney, Vought, or either of their delegates, and "[a]ny individuals associated with the Trump Organization LLC or Trump Hotels, including" a list of fifteen individuals identified by name in the request. First Walsh Decl. Ex. 2 at 2. The second part of the request sought "[a]ll records reflecting communications" with Mulvaney, Vought, or either of their delegates, that contained any of the following six search terms: "Trump Hotel*"; "Trump International Hotel"; TIH; "Trump Org*"; "Post Office"; or OPO. *Id.* at 3. For both parts of the request, OMB conducted a search using the same search terms that it used to search for records responsive to the first request. *Id.* Ex. 6 at 1, 2, Ex. 8 at 1.

OMB's search for records responsive to the second request also was inadequate because it imposed a subject matter limitation that was not present in either part of American Oversight's second request. "'The agency is bound to read the request as drafted, not as agency officials might wish it was drafted,' and it may not narrow the scope of a FOIA request to exclude materials reasonably within the description provided by the requester." *Urban Air Initiative, Inc. v. Envtl. Prot. Agency*, 271 F. Supp. 3d 241, 255–56 (D.D.C. 2017) (quoting *Miller v. Casey*, 730 F.3d 773, 777 (D.C. Cir. 1984) (alterations omitted)). An agency's search is not "reasonably calculated to produce all documents responsive to . . . [a FOIA] request" where the search "contain[s] subject matter and time restrictions that were absent in . . . [the] request" itself. *Utahamerican*, 725 F. Supp. 2d at 83, 82. But that is precisely what OMB's search did here. OMB justified this course of action by stating that both parts of the request "[did] not expressly state a subject matter" and were thus "overly broad." *Id.* Ex. 6 at 1, 2. OMB points to the opening paragraphs of American Oversight's second request, which discussed the FBI

11

headquarters consolidation project, *see* Mot. for S.J. at 6, and argues that it was entitled to "consider the request as a whole," *id.* at 7. Nothing in the request itself, however, incorporated any limitation from those introductory paragraphs, and "[t]o allow an agency to restrict the number of documents that it deems responsive . . . based on its interpretation of the plaintiff's purpose in making the [FOIA] request constitutes an unreasonable limitation" on the search. *Charles v. Office of Armed Forces Med. Exam'r*, 730 F. Supp. 2d 205, 215 (D.D.C. 2010).

Both parts of American Oversight's second request were more straightforward than the searches that OMB ultimately conducted. The second request sought, in essence, (1) all records reflecting communications between two OMB officials (or their delegates) and the fifteen Trump Organization individuals specifically identified in the request and (2) all records reflecting communications by those two OMB officials (or their delegates) containing any one of six terms. Instead of conducting those searches, however, OMB searched for a complex arrangement of terms devised in response to American Oversight's first request. The Court recognizes that American Oversight's second request may generate a large volume of records unrelated to the true object of American Oversight's inquiry and thus encourages the parties to work together to refine these searches to facilitate a timely and efficient response. On this record, however, the Court cannot conclude that OMB has established that it has conducted a search "reasonably calculated to uncover all relevant documents" responsive to American Oversight's second request. *Kowalczyk*, 73 F.3d at 388.

### 3. Non-Email Communications

Each of American Oversight's requests sought "[*a*]*ll* records reflecting communications," *e.g.*, First Walsh Decl. Ex. 1 at 2, "including emails, email attachments, text messages, voicemails, voicemail transcripts, messages on messaging platforms" and various other types of

media through which the custodians may have communicated, *id.* OMB initially limited its searches to email communications. Subsequently, however, OMB conducted "additional searches of each of the custodians' paper records, electronic work folders . . ., and shared network drives accessible by that custodian." Dkt. 21-1 (Second Walsh Decl.) ¶ 7. Because the plain terms of American Oversight's requests sought *all* types of records, including but not limited to emails, OMB must search these additional records again, using appropriate search terms as discussed above. And while courts generally show deference to an agency's decision to restrict its search to certain types of records, *see, e.g.*, *Muckrock, LLC v. CIA*, 300 F. Supp. 3d 108, 125 (D.D.C. 2018), OMB must provide adequate justification in its supplemental declaration for limiting its searches to these particular categories of records.

### B. Presidential Communications Privilege

American Oversight also challenges OMB's withholding of responsive records under FOIA Exemption 5 pursuant to the presidential communications privilege. *See* Cross-Mot. for S.J. at 31. The presidential communications privilege applies to "documents solicited and received by the President or his immediate White House advisers who have broad and significant responsibility for investigating and formulating the advice to be given the President." *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1114 (D.C. Cir. 2004) (internal quotation marks omitted). Documents that "memorialize" presidential communications fall within the privilege even if those documents were not themselves transmitted to the White House. *See Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Homeland Sec.*, No. 06-CV-0173, 2008 WL 2872183, at *2 (D.D.C. 2008) (granting summary judgment to the agency because "the material withheld either memorializes, summarizes, describes or otherwise reflects the content of actual communications between the President or White House advisers . . . even though it was

not transmitted to or from the White House in its current form" (internal quotation marks and alterations omitted)).

OMB asserted the presidential communications privilege with respect to twelve documents, which can be divided into four categories. With respect to the first request, OMB withheld six documents, which fall into two categories: (1) four emails that "discuss preparations for a meeting held on January 24, 2018 involving one or more of the President, Vice President, or an immediate White House advisor to the President," First Walsh Decl. ¶ 28, and contain information that "was both solicited and received by one or more of those individuals," Second Walsh Decl. ¶ 10; and (2) two email chains that "reflect a request for information by the President, the Vice President, or an immediate White House advisor to the President," First Walsh Decl. ¶ 28, the text of which "confirms that the requested information was both solicited and received by one of the above-described persons or their immediate staff," *id*. With respect to the second request, OMB withheld another six documents, which again fall into two categories: (3) an email with two attachments, sent by Jessica Anderson of OMB to Mick Mulvaney, Russ Vought, and two other OMB officials, that "describes a request by the President, Vice President, or an immediate White House advisor to the President for a pre-published draft of a volume of the President's Budget" and "states that the information was supplied to that advisor in response to the request," *id*. ¶ 29; and (4) an email sent from Andrew Abrams of OMB to Vought that "describes information that was being prepared for a meeting with the President, Vice President, or an immediate White House advisor to the President," *id.*, along with two attachments to that email that contain "information to be shared with the above-described person at [the] meeting," *id.*, with respect to which the Vaughn index states that "the sender of the email has confirmed that the information was both solicited and received by that advisor," *id.* App. A.

With respect to each category of documents described above, OMB has confirmed that the documents memorialize communications that were "solicited and received by the President or his immediate White House advisers." *Judicial Watch*, 365 F.3d at 1114. However, with respect to three of the above categories, OMB has failed to allege that the withheld documents related to matters of presidential decisionmaking. This Court has previously refused to grant summary judgment to an agency asserting the presidential communications privilege absent such allegations. *See Prop. of the People, Inc. v. Office of Mgmt. and Budget*, 330 F. Supp. 3d 373, 390 (D.D.C. 2018) ("[T]he mere fact of communications between the OMB Director and White House staff or agency staff on matters of policy is insufficient to show that [the withheld documents] concern matters of presidential decisionmaking."). The email from OMB official Jessica Anderson and the two attachments to that email involved a matter of presidential decisionmaking because they concerned "a request by the President, Vice President, or an immediate White House advisor to the President for a pre-published draft of a volume of the President's Budget," First Walsh Decl. ¶ 29, a subject that falls squarely within the realm of presidential decisionmaking. But with respect to the other three categories of documents, the current record does not permit the Court to determine whether the presidential communications privilege properly applies to these documents. OMB must therefore "support its contention that the [withheld documents] relate to presidential decisionmaking." *Prop of the People*, 330 F. Supp. 3d at 390.

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that OMB's Motion for Summary Judgment, Dkt. 18, is **GRANTED** in part and **DENIED** in part. The motion is granted with respect to Docs. # 014, 015, and 016, *see* First

Walsh Decl. App. A, which the Court concludes were properly withheld under the presidential communications privilege, and it is denied in all other respects. It is further

**ORDERED** that American Oversight's Cross-Motion for Summary Judgment, Dkt. 19, is **DENIED** without prejudice. And it is

**ORDERED** that on or before June 1, 2020, OMB shall supplement the record consistent with this opinion and, if warranted, release any additional responsive records.

March 31, 2020

DABNEY L. FRIEDRICH
United States District Judge